# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MELANIE D. DALY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO.: 3:13-CV-41-TLS ) |
| CAROLYN COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The Plaintiff, Melanie D. Daly, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c.

## PROCEDURAL HISTORY

The Plaintiff applied for benefits effective June 3, 2010, alleging an onset date of January 2006. The Plaintiff was 36 years old when she filed for benefits. She was denied on initial consideration and reconsideration. The Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ). On October 4, 2011, the Plaintiff appeared before ALJ David Skidmore, who heard testimony from the Plaintiff, a vocational expert, and the Plaintiff's mother.

On October 14, 2011, the ALJ issued a decision finding that the Plaintiff was not disabled under § 1614(a)(3)(A) of the Social Security Act. On November 21, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

On February 22, 2013, the Plaintiff filed a Complaint in this Court seeking review of the

Commissioner's decision.

## EVIDENCE OF RECORD

The Plaintiff claims to be disabled due to back pain that she treats with Norco and morphine. The back pain is the result of degenerative disc disease.

In April 2008, the Plaintiff underwent a discectomy of her L4-L5 for treatment of degenerative disc disease. She initially improved, but then started having pain again. Her symptoms waxed and waned. In February 2010, the Plaintiff returned to her neurosurgeon, Dr. David W. Cockerill, with complaints of pain across her back into both hips and down her left leg into the foot. After Dr. Cockerill evaluated the Plaintiff and reviewed an MRI, he recommended that the Plaintiff have an L4-5 decompression and fusion surgery to correct a fairly large disc herniation and degenerative changes, as the treatment she had been receiving for pain had not alleviated her symptoms. On February 24, 2010, Dr. Cockerill placed the Plaintiff on a four week no work restriction leading up to the scheduled surgery. The Plaintiff saw Dr. Cockerill for follow-up exams before the surgery in March. However, the Plaintiff never underwent the fusion surgery because the long recovery time would interfere with her ability to care for her six-year-old daughter. The Plaintiff last visited Dr. Cockerill in April 2010. She requested a discectomy instead of a fusion, which Dr. Cockerill believed would be an unsatisfactory procedure with a high likelihood of failure and continued pain. The Plaintiff took Dr. Cockerill's recommendation under advisement.

The Plaintiff saw Dr. Joseph Glazier for pain management treatment from 2007 to December 2010. She was first referred to him for epidural steroid therapy when her pain and

2

discomfort were not improving with conservative treatment. The Plaintiff's medical records reveal pain levels ranging from 5 out of 10 to 8 out of 10 from September to November 2010. (R. at 273–76, Ex. 17F, ECF No. 7 at 276–78.) In December 2010, Dr. Glazier wrote a letter summarizing his treatment of the Plaintiff. He wrote that the Plaintiff continued to have "very significant lower lumbar tenderness despite current medications" and had "very significant bilateral positive straight leg raising." (R. at 272, Ex. 17F, ECF No. 7 at 275.) Dr. Glazier stated that "[i]n general," the Plaintiff was "able to walk only with systems [sic] of a cane and very cautiously because of left leg weakness and severe pain despite analgesics. I regard her at the present time as totally disabled." (*Id.*)

Five months earlier, in July 2010, Dr. Peter Sices had examined the Plaintiff at the request of the Disability Determination Services. The Plaintiff appeared at the examination alone and did not use an assistive device. Dr. Sices reported that the Plaintiff had a normal gait with a stable and sustainable appearance and could carry light objects with either hand. She was able to get onto and off of the examination table without complaint of pain and without assistance. Muscle strength was 5/5 except for 3/5 in her hips, which was associated with exacerbation of low back pain. Dr. Sices reported that the Plaintiff had chronic low back pain with a poor prognosis for improvement.

Dr. M. Brill reviewed the Plaintiff's records and completed a physical residual functional capacity assessment in August 2010. He reported that the Plaintiff could occasionally lift or carry 20 pounds, frequently lift 10 pounds, and stand, sit, or walk with normal breaks for about 6 hours in an 8-hour day. The Plaintiff did not have any manipulative limitations. Dr. Brill did not find that the Plaintiff would require a hand held assistive device for ambulation. He stated that

there were no medical source opinions in the Plaintiff's filed that included limitations or restrictions that were significantly different from his findings. In December, Dr. J. Sands reviewed the evidence in the file and affirmed Dr. Brill's assessment.

The Plaintiff testified before the ALJ that she does some household chores, use her computer, and plays board games, but spent a lot of time in a reclining position. She estimated she could sit for 10 to 15 minutes at a time before experiencing pain and stiffness. Leaning forward on her elbows helped alleviate the pain when she was sitting. She could also stand for 10 to 15 minutes at a time. The Plaintiff testified that she could lift 10 pounds.

## ANALYSIS

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits as required by 20 C.F.R. § 404.1520. The Plaintiff was unemployed and satisfied the step one inquiry. At step two, the ALJ determined that the Plaintiff's lumbar disc disease had an impairment that caused more than minimal limitations in her ability to perform basic work activities. As such, it was a severe impairment. Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in" appendix 1.20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment rises to this level, she earns a presumption of disability "without considering [her] age, education, and work experience." *Id.* at § 404.1520(d). But if the impairment falls short, an ALJ must examine the claimant's "residual functional capacity"—the types of things she can still do physically despite her limitations—to determine whether she can perform this "past relevant work," *id.* at § 404.1520(a)(4)(iv), or, failing that, whether the claimant can "make an adjustment to other

work" given her "age, education, and work experience," *id.* at § 404.1520(a)(4)(v). The ALJ determined that the Plaintiff's impairment did not meet or equal any of the listings in appendix 1. And because she could still perform sedentary work, she could "make an adjustment to other work" in occupations such as addresser, touch up screener, account clerk, and hand mounter, thus thwarting her disability claim at step five. Essentially, the Plaintiff argues that the ALJ erred in his interpretation of the medical evidence, which caused him to reach the wrong conclusion regarding the Plaintiff's RFC. Specifically, the Plaintiff claims that the ALJ should have given controlling weight to the opinions of Dr. Cockerill and Dr. Glazier.

In an appeal from the denial of social security benefits, the court is not free to replace the ALJ's estimate of the medical evidence with its own. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (stating that the court may not reweigh the evidence or substitute its judgment for that of the ALJ). Instead, the court reviews the ALJ's decision for substantial evidence, 42 U.S.C. § 405(g), meaning that the court ensures that the decision rests on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When an ALJ recommends that the agency deny benefits, it must first "build an accurate and logical bridge from the evidence to the conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the

ALJ commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

The ALJ's job was to assess the Plaintiff's RFC by evaluating the "objective medical evidence and other evidence" to determine whether it was consistent with the Plaintiff's subjective statements regarding her impairment. 20 C.F.R. § 404.1529(a), (d)(3). In general, the claimant is responsible for providing the evidence that the ALJ uses to determine the RFC. 20 C.F.R. § 404.1545(a)(3). Evidence offered must be "complete and detailed enough to allow" the ALJ to make a determination of disability, including the RFC to do work-related physical activities. 20 C.F.R. §404.1513(e). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). But an ALJ must only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ's conclusion that the Plaintiff was functionally able to do sedentary work was entirely consistent with the opinion offered by Dr. Sices, the doctor for Disability Determination Services who examined the Plaintiff in July 2010. The ALJ noted that Dr. Sices was a medical expert, he thoroughly examined the Plaintiff, and he determined that she had no impairments related to "gait, coordination, vision, hearing, speech, memory, concentration, attention span, social interactions, of fine and gross manual dexterity," but that she had "chronic low back pain" with a poor prognosis for improvement. The examination revealed that the Plaintiff did not have limitations in her range of motion, but had reduced strength in her hips. The ALJ credited the report's findings as being "consistent with the medical records, which indicate the claimant

6

experiences significant back pain, but not to such extent it would preclude sedentary work." (R. at 17, ECF No. 7 at 20.)

The ALJ did not give as much weight to the opinions of state agency medical consultants, Dr. Brill and Dr. Sands. The ALJ noted that they were medical experts who had an opportunity to review the entirety of the Plaintiff's medical record and were familiar with Social Security Records, but that they did not actually meet and examine the Plaintiff. Although he thought their opinion that the Plaintiff could perform work at the light exertional level with additional postural limitations was "generally consistent with the medical record," he only afforded their opinions "some weight" because he thought the evidence merited that the Plaintiff be further limited to the sedentary level of exertion. (R. at 17.)

The ALJ discussed and dismissed the medical evidence that the Plaintiff contends supports her claim of disability. In particular, the ALJ afforded "very little weight" to the opinion of Dr. Cockerill that the Plaintiff should be excused from work for four weeks in February 2010, as the opinion did not address any time beyond four weeks and did not address the Plaintiff's "long term physical limitations." (R. at 18.) The ALJ concluded that the opinion had "no probative value for purposes of determining the claimant's functional limitations." (*Id.*) In providing this reasoning, the ALJ adequately explained why he assigned little weight to the four week work restriction.

There is nothing inaccurate in the ALJ's statements about the limited value of a four week restriction leading up to a scheduled surgery. The restriction was not accompanied by any assessment of the Plaintiff's actual limitations. There is no indication in the record as to what kind of work Dr. Cockerill believed was at issue, or that the Plaintiff was even working at the

7

time. In fact, the ALJ noted elsewhere in his decision that the Plaintiff had not worked for more than ten years. Even if the restriction supported the finding that the Plaintiff's limitations prevented her from doing any work, including sedentary work, the restriction was put in place for only four weeks. Because the Plaintiff stopped seeing Dr. Cockerill when she decided not to have the fusion surgery, there is nothing in the record to suggest that he would have continued to restrict her work activity. The Plaintiff bears the burden of proving that she is disabled, and the note was insufficient evidence that her degenerative disc disease rendered her incapable of working in sedentary positions, particularly in light of the opinion of the consulting physician, Dr. Sices. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision."); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) ("[I]n the end, it is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence.").

The ALJ also gave "little weight" to the opinion of Dr. Glazier, the Plaintiff's treating pain management specialist. The Plaintiff argues that the ALJ should have given more weight to Dr. Glazier's opinion that the Plaintiff was "totally disabled" from work. According to the ALJ, Dr. Glazier did not offer findings to support this conclusion. The only functional limitation Dr. Glazier mentioned was that the Plaintiff was unable to walk without the aid of a cane, but the ALJ found this statement "extremely difficult to credit" because the Plaintiff had appeared at her consultative exam five months' earlier without any assistive device. Additionally, the medical

records indicated that the Plaintiff's symptoms waxed and waned, but they did not reveal that the symptoms "waxed so dramatically so as to reduce her from the ability to ambulate without difficulty to being only able to ambulate with the assistance of a cane." (R. at 17–18.) In any event, the sedentary positions that the vocational expert identified were capable of being performed even by a person who ambulated with the assistance of a cane. (R. at 20.) Thus, contrary to the Plaintiff's argument, Dr. Glazier did not assign functional limitations on the Plaintiff that established she was unable to sustain full time employment.

The ALJ provided an adequate explanation for giving more weight to the evaluation of Dr. Sices and built a logical bridge between the evidence of the Plaintiff's impairment and his conclusion that the Plaintiff was "limited to less than the sedentary exertional level due to her degenerative disk [sic] disease" and required a "sit/stand option that permit[ted] altering positions once an hour for five minutes." (R. at 18.) As this Court cannot alter this RFC without reconsidering facts, reweighing evidence, or resolving conflicts in evidence, it finds no basis to remand the ALJ's decision.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the Commissioner's decision. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on January 27, 2014.

                                             s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT
                                            FORT WAYNE DIVISION